All right, next matter on the docket is People v. Forest, No. 5-10-0356. Ms. Lane? May it please the court, Ms. Shanahan. My name is Arden Lang. I am an assistant appellate defender with the 4th District Office of the State Appellate Defender in Springfield, and I am here on behalf of my client, Gerardo Forest, who seeks redress from the trial court's ruling that the untimeliness of his post-conviction petition was not excused. The Post-Conviction Hearing Act provides a remedy to criminal defendants whose federal or constitutional rights were substantially violated during this original trial, and in that regard, over time, in the last several years, the courts with the, perhaps with our Supreme Court leading the way, have afforded greater access to the Post-Conviction Hearing Act to criminal defendants and have looked, in this regard, in terms of the culpable negligence standard for determining timeliness or untimeliness, and have, even while the legislature has collapsed the time for filing post-conviction petitions, the courts have given some heft to the concept of the culpable negligence standard and have suggested that while they will not, while the, that standard is not defined, it's more akin to a recklessness standard, and that standard is an important safety valve for defendants who may have their time expired for reasons beyond their control. It is Mr. Forrest's assertion that he was entitled to have the benefit of the culpable negligence standard, and the resolution of this appeal hinges on this court's interpretation of that standard as it pertains to the particular facts of Mr. Forrest's case. Mr. Forrest did file his petition late, and there's no debate about that, but Mr. Forrest presents, case, presents a record that's really important and really replete with evidence about just who Mr. Forrest is and what his deficits are. The pretrial record, the trial record, and the post-conviction record all contain really volumes of evidence about Mr. Forrest's deficits. First and foremost, Mr. Forrest's deficits are that Mr. Forrest is retarded, he's mentally retarded. He first had that diagnosis at the age of four. At the age of six, he was evaluated by Dr. Daniel Punio, who wound up evaluating him again at trial and then again in the post-conviction proceedings. So there is a long history of retardation, and while the technical term is mild retardation, Mr. Forrest's deficits are not mild in the way that a lay person would think of mild deprivation. Mr. Forrest is functionally illiterate. He has the intellectual capacity at this time of a nine-year-old. He read at the kindergarten level. As he put it, he had trouble remembering, learning, and spelling. He was in special education classes and behavioral classes, all through school. He dropped out at 14. He had a low frustration level, which Dr. Punio described as something that comes hand-in-hand with mental retardation. So when he got to prison, or excuse me, his low frustration level caused him to hear voices, caused him to try to take his own life. In jail before he was tried, he was placed on Haldol. Haldol apparently suppressed some of the voices that he heard. It also causes, according to Dr. Punio, causes visual disturbances or changes in visual acuity. Then when Mr. Forrest got to prison, he was released. There's no dispute but that he wound up in segregation and was placed in segregation for behavioral outbursts and the fact that he would not take his medication. Starting in 2001, the Department of Corrections forced medication upon him, and it was not until 2003 that Mr. Forrest's mental instabilities stabilized, and in 2004 he was able to seek the help of what we locally call a jailhouse lawyer, G-Money, named here in his petition. And the petition was sent to the court in due course. So the record establishes mental retardation, mental illness, serious mental deficits, much more serious than what much of the case law discusses. And the psychologist who knew Mr. Forrest at six, who knew Mr. Forrest before trial, was the same psychologist who was brought in to evaluate him again and then presented his findings to the court. And Mr. Forrest actually testified in order to proceed with having Dr. Punio come in. And so that's all documented on the record. Then the state filed its motion to dismiss and the court granted the motion to dismiss on one ground and one ground only, and that was untimeliness. That was the only... While the state's petition raised other grounds for dismissal, it was only the untimeliness which the court looked at, and the court found untimeliness. Let me ask a question about that. Since the court only dismissed the petition based on the evidence, why can't we remand for a new second stage determination? I mean, you requested that we remand for a third stage hearing. I think a second stage would be a fine determination. I mean, in other words, the trial court hasn't addressed any of the subsequent second stage issues. Yes, yes. I'm not... I have no problem with that at all. Anyhow, I believe the trial court, if this court applies a de novo standard to this case and looks at the issues, looks at the, really the severity of the deficits for Mr. Forrest, looks at the testimony from Dr. Punio, looks at the testimony from Mr. Forrest himself, that the only fair result would be further proceedings under the Post-Conviction Hearing Act. If there are no other questions. Thank you very much. Sharon Shanahan. May it please the court. Counsel. My name is Sharon Shanahan, and I live in Illinois. The issue here is whether the defendant was culpably negligent in failing to file a timely post-conviction petition. What it comes down to is that defendant couldn't file this petition because he was in segregation. He was in segregation because he got in fights and because he made suicide attempts. He got in fights and he made suicide attempts because he refused to take his medication. As soon as he started taking his medication, his mental condition stabilized. He knew he needed to file a post-conviction petition, and he did. There's no dispute about what your opposing counsel here said at the record of disclosures about his mental capacity, reading at a kindergarten level, mental capacity of a 90-year-old, and so on. None of that's actually disputed, is it? I don't think so. I'm sure the court is aware I didn't write the brief in this case and have not done the review of the record that normally I would when I'm appearing before this court, but I have no reason to dispute. I would note, however, that in regard to his retardation, that he did file a pro se motion to suppress, and he did that on his own. I would say that the standard for filing a motion to suppress is- How do we know he did that on his own? Was there any testimony about it or anything? Well, it's a pro se motion. I mean, it's handwritten. Well, maybe G-Man was in jail with him at the time or something. I don't know. Somebody may have helped him draft it in the jail. I mean- He's in a jail. He's not in prison. G-Man's in- I know. The similar thing, the opposite argument could be made, which is there's no reason to think that he didn't write it. He's in jail. We just don't know, do we? He signs it, and I note that in the reply brief, counsel says, well, the signature is an illegible scrawl. If that's the standard for not being educated, then I think we all have to leave. I mean, I've never seen a lawyer with an illegible signature. I mean, honestly, really, on this motion to suppress, I mean, we really don't know whether somebody helped him write it or wrote it. We just don't know. I don't know that it matters. I don't know that it matters that he knew that he had- what he had to- I think what matters is that he knew he had to file a timely post-conviction- that he knew he had to file a post-conviction petition. Because he filed a motion to suppress during his original charge? I'm sorry, but maybe we're talking about- I mean, you argued that he must know how to file documents because he filed a pro se motion to suppress, and wasn't that during- that was before he was convicted, right? And so how does that tell us that he knew that he had to file a timely post-conviction petition? Well, it tells us that he knows how to file a legible, understandable petition. The timing is a separate thing. I think that- the defendant seems to allege that since Risley, everything's changed, and that we can't look at earlier Supreme Court cases that say that a fourth grade education is not an excuse for not filing a timely- Understanding the post-conviction hearing. Yes, and there are Supreme Court cases that say that. I know. There are Supreme Court cases that say that mental illness is not an excuse. There are Supreme Court cases most- excuse me, there's an appellate court case right before Risley, which I think is the most critical one in this case, that says if it's- excuse me, if it's your fault that you're in segregation, that's not an excuse for filing a timely post-conviction petition. And I think that's what it gets down to. Isn't it unusual that the minute his mental health is stabilized, he knows what to do and he does it. Whether he got some help from a jailhouse lawyer, whether he went to the law library and asked the law librarian to ask him, whether he did it himself, the fact of the matter is, as soon as his mental condition stabilized, he did what needed to be done. The only reason that it wasn't stable before is because he refused to take his medicine. But just because he started taking his medicine, he didn't start functioning beyond a nine-year-old or reading at a kindergarten level. You're not arguing that, but he somehow became intelligent. His intelligence doesn't change. But as I said, there certainly are Supreme Court cases that I see no reason to doubt the logic behind them that says, cited in the state's brief, fourth grade level, this guy's at a nine-year-old, so about the same thing, that that's not an excuse for knowing- what we're dealing with is, does he know that it has to be filed in a timely period? And the Supreme Court said, somebody that is at a comparable level to what this defendant is, that's not a good enough reason. The fact that that Supreme Court case was decided before Risley- Risley does not say, oh, it's easy to establish culpable negligence. Risley says it's hard. Risley says it's akin to recklessness. That's a hard standard. If the state has to prove recklessness in a criminal charge, that's a hard standard to prove. So I don't think you can say that Risley has suddenly said, oh, it is so easy to establish that a defendant is not culpably negligent. It's still hard. The earlier cases by the Illinois Supreme Court that deal with similar defendants to this said that even if you are reading at a kindergarten level, you still are expected to be able to file a timely posting. So anytime you're late, you're guilty of culpable negligence. Well, again, I think this is a- I mean, in Risley, that defendant had been in constant contact with his attorney the entire time, and his petition was actually filed, I believe, six days late and actually early under what he thought at the time. He'd been doing something. The only thing this defendant had been doing was refusing to take the medication that would have allowed him to take the- to know that he needed to take the action, which he knew he needed to take as soon as he was forced to take the medication. I guess what it comes down to is a lack of- I believe it's- counsel said that he was functioning at the level of a nine-year-old. Nine-year-olds can read and write and understand simple directions. The Illinois Supreme Court has made it extremely simple to file a first-stage post-conviction petition, and it's a just standard. That's the whole point of the just standard, is that it's easy. It doesn't take someone with a lot of education to understand. And the only thing that prevented this defendant from being able to comply with that was his own actions in refusing to take his medication. I would submit to this court that the Illinois Supreme Court cases that say that lack of education, lack of IQ, and mental illness do not excuse the late filing are still good law. I don't think Risley changed that. I don't think it intended to change that. And I would submit that the only reason this petition was late was the defendant's fault. Is there any other questions? Any rebuttal? I realize that Ms. Shanahan was summarizing cases, but there really is no case that is directly on point in terms of the kinds of deficits that Mr. Forrest had. And there is nothing in the record to suggest that Mr. Forrest could read at the fourth grade level. It was that he functioned intellectually, which meant if you explained something to an average nine-year-old child, you would get the response of an average nine-year-old child, not that he read as a nine-year-old child would read, that he was capable of learning geography and history and English. I don't mean to belabor the point. And just in terms of the motion to suppress, there is a motion to suppress there. There is nothing in the record other than Mr. Forrest's signature to suggest that he did anything other than sign it. My point in mentioning that there was a sprawl was that by comparison, the rest of the petition is very neatly printed. I'm not sure that we don't know that Mr. Forrest had the capacity to do that. The judge looked at that and made that decision. At the same time, when the judge had to decide before trial whether to suppress Mr. Forrest's confession or whether to have it come into the record and have the jury hear it, the court did suppress the confession based on the fact that he believed that the defendant did not have the mental capacity to waive his Miranda rights. So, I mean, there's an awful lot on the record to substantiate the allegations in the petition as to untimeliness. And if there are no other  Thank you both for your excellent briefs and arguments. We'll take this matter under advisement.